AF Approval

Chief Approval

## STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:16-cr-475-T-23AEP

DAVON SMITH

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. W.

~~Lee Bentley, III,~~ Stephen Muldrow Acting United States Attorney for the Middle District of Florida,

and the defendant, Davon Smith, and the attorney for the defendant,

Roseanne Brady, Esq., mutually agree as follows:

**A.   Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts Six and

Twenty-One of the Indictment.  Count Six charges the defendant with access

device fraud, in violation of 18 U.S.C. § 1029(a)(1).  Count Twenty-One

charges the defendant with aggravated identity theft, in violation of 18 U.S.C.

§ 1028A.

Defendant's Initials DS

2.    Maximum Penalties

Count Six carries a maximum sentence of ten (10) years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than three (3) years, and a special assessment of $100.  Count Twenty-One carries a mandatory term of imprisonment of two years consecutive to any term of imprisonment for Count Six, a fine of up to $250,000, a term of supervised release of not more than one year, and a special assessment of $100.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Six are:

First:      The defendant knowingly produced, used, or trafficked in
            a counterfeit access device;

Second:     The defendant knew the access device was counterfeit, and
            acted with the intent to defraud or deceive; and,

Third:      The defendant's conduct affected interstate or foreign
            commerce.

The elements of Count Twenty-One are:

First:    The defendant knowingly transferred, possessed, or used
          another person's means of identification or identification
          document;

Second:   The defendant did so without lawful authority; and,

Third:    The defendant did so during and in relation to a qualifying
          predicate offense, in this case, access device fraud.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the
defendant, Counts One through Five, Seven through Fifteen, Eighteen
through Twenty, and Twenty-Two through Twenty-Six, will be dismissed
pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States
Attorney's Office for the Middle District of Florida agrees not to charge
defendant with committing any other federal criminal offenses known to the
United States Attorney's Office at the time of the execution of this agreement
based on the facts giving rise to this agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to
make full restitution to the victim financial institutions, jointly and severally

Defendant's Initials ⅅＳ            3

with his codefendants, in an amount of at least $52,206.51. The defendant acknowledges that the final restitution amount will be determined by the Court at the time of sentencing.

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or

Defendant's Initials D.S.                    4

request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a

Defendant's Initials  DS          5

full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and

Defendant's Initials DS          6

the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and

Defendant's Initials DS          7

unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court,

Defendant's Initials  DS          8

prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

Defendant's Initials $\underline{DS}$          9

United States, the United States may move the Court to declare this entire plea agreement null and void.

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C), whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to: a money judgment in an amount to be determined by the Court at the time of sentencing, representing the amount of proceeds obtained as a result of the offense charged in Count Six.

The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the

forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The defendant further agrees that the United States is seeking a money judgment because, as a result of the defendant's actions, the criminal proceeds cannot be located despite the exercise of due diligence. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any

Defendant's Initials  DS          11

other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for

acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further

Defendant's Initials  DS            13

understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed

Defendant's Initials DS            14

from the United States, denied citizenship, and denied admission to the United States in the future.

    4.   <u>Sentencing Information</u>

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.   <u>Financial Disclosures</u>

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including

Defendant's Initials ⟶ D⟩        15

those held by a spouse, dependent, nominee or other third party. The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years. The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court. The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

    6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to

nor bound by this agreement. The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office. The defendant

understands and acknowledges that, although the parties are permitted to

Defendant's Initials _____      16

make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

        The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

Defendant's Initials  <u>     </u>      17

the ground that the sentence violates the Eighth Amendment to the

Constitution; provided, however, that if the government exercises its right to

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

defendant is released from his waiver and may appeal the sentence as

authorized by 18 U.S.C. § 3742(a).\

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the

Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this

office will bring defendant's cooperation, if any, to the attention of other

prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or

in camera, in whole or in part, upon a showing of good cause, and filed in this

cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon

any discussions between the attorney for the government and the defendant

and defendant's attorney and without promise of benefit of any kind (other

Defendant's Initials ⟍⟍          18

than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are

Defendant's Initials ＱＳ          19

felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

From at least in or around January 2015, through and including in or around November 2016, Terrance Cobb, Brandon Lewis, Davon Smith, Dontae Williams, and others together committed credit card fraud and identity theft in the Tampa Bay area. Investigators learned that these defendants and others working with them purchased stolen credit and debit card account numbers online from various websites, some or all of which used bitcoins as their currency. Once they purchased the stolen credit or debit account numbers, they or someone working with them created counterfeit credit cards in a number of ways. These defendants and others working with them purchased or stole reloadable gift cards and scratched off or otherwise damaged the magnetic strips on the back of the gift cards so they could not be read by merchants' point of sale (POS) terminals. The defendants and others

Defendant's Initials ⊃S        20

then used an embosser to emboss the stolen account numbers and their own names on to the front of these altered gift cards, thereby generating counterfeit credit cards.  In some cases, these defendants and/or others used a label maker to affix the CVV security code associated with the stolen account to the back of the counterfeit card / altered gift card.  The defendants then used and attempted to use these counterfeit credit cards at various retailers around the Tampa Bay area.  When these retailers' POS terminals count not read the damaged magnetic strips on the counterfeit credit cards, the defendants advised the store clerks to manually enter the stolen account information embossed on the front of the counterfeit cards to make the purchase.  The defendants typically bought gift cards and electronics, which they kept or used and also sold for cash.

For example, on or about April 6, 2016, between 21:30 and 21:55 hours, Brandon Lewis, Terrance Cobb, Davon Smith, and Dontae Williams together entered the Wal-Mart store # 2627 at 2701 E. Fletcher Avenue, Tampa, FL.  All of them proceeded to purchase gift cards using counterfeit cards at different registers at approximately the same time in the same manner.

Starting at approximately 21:34 hours, store surveillance video shows Dontae Williams handing the cashier a yellow and black gift card.  The surveillance video shows that the cashier attempted to swipe a credit card

through the POS terminal.  The cashier is then seen hand-keying the numbers

from the front of the card in to the cash register.  After this, the cashier turned

the card over in order to enter the CVV security code into the register and, in

doing so, revealed that the magnetic strip on the back of the card was

scratched with visible vertical lines.  Receipt information related to this

transaction shows that Williams purchased a reloadable gift card for $304.94

using a card that was re-embossed with the stolen USAA debit card account

information for an account ending in -6943.  The account ending in -6943 was

a debit card that originally issued by USAA Bank to V.R. of San Antonio, TX.

Immediately after this transaction, Williams used the same counterfeit card re-

embossed with the account ending in -6943 to purchase a second gift card for

$504.94 at the same register in the same manner.  Finally, Williams attempted

a third purchase, but it was declined.

Approximately seven minutes later at 21:41 hours, store surveillance

video footage captured Terrance Cobb in another cashier line at the same Wal-

Mart.  The video shows the cashier swiping a gift card Cobb was purchasing

through the POS terminal in order to load it with funds.  Cobb can be seen

attempting to swipe a Green Dot counterfeit credit card through the customer

POS terminal, but it is clear from the video that the POS terminal could not

read the information on the card.  Cobb then handed his counterfeit credit

Defendant's Initials DS          22

card to the cashier, who hand-keyed in the account information that was embossed on the front of the card. Receipt information for this transaction shows that Cobb purchased a gift card at 2141 hours (transaction number 6600) in the amount of $304.94 using a debit card account issued by Bancorp ending in -5463. After this first purchase, Cobb handed the cashier another reloadable gift card to purchase using the account ending in -5463, which transaction was also hand-keyed in for $304.94. This second transaction (# 6602) occurred at 2142 hours.

Starting at approximately 21:44 hours, Davon Smith was captured on a surveillance video handing a cashier a reloadable gift card to purchase. The video shows Smith attempting to swipe his debit/credit card in the customer POS terminal in order to purchase the gift card. When the POS terminal could not read Smith's card, he handed it to the cashier, who hand-keyed in the transaction. The receipt shows that Smith purchased a gift card loaded with $204.94 using a counterfeit credit card embossed with the account information from a USAA debit card ending in -0869. (Count Six) Smith purchased a second gift card for $304.94 using the same card ending in -0869, which was also hand-keyed in by the cashier.

Investigators telephonically interviewed S.M. of Monroe, Ohio, the true owner of the USAA debit card ending in -0869. S.M. confirmed she did not

Defendant's Initials D S          23

know Smith or any of the other defendants, nor did she give any of them permission to possess or use her debit account information. (Count Twenty-One.)

Again on the same night in the same store, starting at approximately 21:47 hours, Terrance Cobb went to another cashier to purchase more gift cards. The video commences with the cashier handing a GreenDot card back to Cobb. Receipt information shows that the transaction for $304.94 was hand-keyed in by the cashier and was attempted the Bancorp debit card ending in -5463, which belonged to B.J.G., but the transaction was declined. The video then shows Cobb handing the cashier a second counterfeit credit card to make the purchase of the $304.94 gift card at 2147 hours (transaction #3592). The cashier hand-keyed in the account information to make the purchase, which was completed using a stolen account ending in -2458. This account was issued by USAA bank to M.L. After purchasing the first gift card, Cobb handed the cashier a second gift card to purchase using the same counterfeit credit card re-embossed with the account ending in -2458. Receipt information shows that Cobb purchased a second gift card for $304.94 at 2148 hours (transaction #3593) using this counterfeit credit card, which was similarly hand-keyed in by the cashier.

Defendant's Initials DS          24

After purchasing the first two gift cards, the surveillance video shows Cobb attempted to purchase a third gift card using the same counterfeit credit card re-embossed with the account ending in -2458, but the transaction was declined. Cobb then handed the store clerk yet another counterfeit credit card, which was a GreenDot card re-embossed with the stolen debit/credit information of an account ending in -8099. That transaction was similarly declined. Cobb then handed the cashier another counterfeit credit card, which was re-embossed with the credit /debit information from a Citibank account ending in -7667. During this transaction, the video shows Cobb handing a driver's license to the cashier. The cashier looked at the driver's license and the credit card, presumably to ensure that the names matched. The cashier then handed back the driver's license and hand-keyed in the account information for the card ending in -7667. This transaction was declined. Finally, Cobb gave the cashier yet another counterfeit credit card, which appeared blue on the video, and was re-embossed with a stolen account from Centennial Bank ending in -8195. Receipt information shows that Cobb successfully purchased a gift card in the amount of $404.94 using the account ending in -8195.

Also on the same night at the same store, starting at approximately 21:49 hours, Brandon Lewis was captured on a surveillance video purchasing

Defendant's Initials ⟍⟍_____          25

a gift card.  The video shows the cashier hand-keying in to her register the

numbers from the front of a black and yellow counterfeit credit card.  Receipt

information shows that Lewis purchased one reloadable gift card for $204.94

at 2149 hours (transaction # 6607) using an account ending in -7638, which

was issued by First Community Bank - Walhalla to J.W.  After the first

purchase, Lewis bought a second reloadable gift card for $204.94 at 2151

hours (transaction # 6609) using the same counterfeit credit card re-embossed

with the account ending in -7638.

Later the same night, at approximately 3:15 a.m. on April 7, 2016,

Lewis, Cobb, Smith and Williams were stopped in a vehicle in Tampa.

Searching officers recovered, among other things, the following items of

evidentiary value:

a.     Eleven counterfeit credit cards that Lewis threw under a

parked car, all embossed with Brandon Lewis' name.  Each of these cards had

an obliterated or scratched magnetic strip on the back.

b.     Seventeen gift cards from Brandon Lewis' pockets.

c.     A receipt from Brandon Lewis' pocket for a purchase of a

gift card at Wal-Mart on Big Bend Road in Riverview, FL for $405.44.

d.     Fourteen counterfeit credit cards embossed with Davon

Smith's name from Smith's wallet, along with five reloadable gift cards and

$145 in U.S. currency.  Each of the recovered counterfeit credit cards had a scratched and/or obliterated magnetic strip.

e.   Three reloadable gift cards from the pocket of the driver's side door.

f.   Three counterfeit credit cards, all with obliterated magnetic strips and embossed with Terrance Cobb's name, recovered from Cobb's pocket.  Cobb also had two reloadable gift cards and $50 in cash in his pockets.

g.   Two gift cards from the glove compartment in front of the passenger seat where Williams was seated in the car prior to the stop.

h.   A receipt from the Wal-Mart on Brandon Boulevard for the purchase of a $500 gift card and $356 in cash from Williams' wallet.

i.   Ten gift cards located in a WaWa plastic bag from the rear passenger seat where Lewis had been located at the time of the stop.

j.   35 gift cards in a Wal-Mart plastic bag in the back seat.

Defendant's Initials DS          27

12. Entire Agreement

       This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

       The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

       DATED this _31st_ day of _March_, 2017.

W. STEPHEN MULDROW
~~A. LEE BENTLEY, III~~
~~Acting~~ United States Attorney

_Davon Smith_
Davon Smith
Defendant

_Amanda L. Riedel_
Amanda L. Riedel
Assistant United States Attorney

_Roseanne Brady_
Roseanne Brady, Esq.
Attorney for Defendant

_Simon A. Gaugush_
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section